UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
FARAM 1957 S.p.A., :
:
         Plaintiff, : CIVIL ACTION NO.
:
 -against- :
: **COMPLAINT**
FARAM HOLDING AND FURNITURE, INC., :
DOMENICO GUZZARDI, FRANCESCO :
INGALLINERA and LETIZIA INGALLINERA, :
:
         Defendants. :
------------------------------------------------------------x

         Plaintiff Faram 1957 S.p.A. ("FARAM 1957"), through its attorneys, Schnader Harrison Segal & Lewis LLP, for its complaint against the defendants, alleges as follows:

## NATURE OF THE CASE

         1.    This is an action for trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a); trademark counterfeiting under Section 34 of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d), and 1117(b)-(c); unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); cybersquatting under the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1); and unlawful deceptive acts and practices under N.Y. Gen. Bus. Law § 349, all based upon defendants' unauthorized manufacture, advertisement, promotion, marketing, distribution, offer for sale and/or sale of goods (the "Counterfeit Goods"), specifically including office furniture and furnishings bearing unauthorized and spurious copies of federally registered trademarks belonging to FARAM 1957 (the "FARAM Trademarks") via catalogues and a website www.faram-holding.com (the

"Infringing Website"), using the same product names, designs, trademarks and graphics that belong to FARAM 1957.

2. FARAM 1957 seeks preliminary and permanent injunctive relief, an order of seizure, an order to disable the Infringing Website, statutory damages, treble damages or profits, pre-judgment interest, attorneys' fees and costs, and investigators' fees and costs, pursuant to 15 U.S.C. § 1117, *et seq.*

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121. This Court also has jurisdiction, pursuant to principles of supplemental jurisdiction under 28 U.S.C. § 1367, over FARAM 1957's claims for unlawful and deceptive acts and practices under New York law.

4. This Court has personal jurisdiction over all defendants because defendant Faram Holding and Furniture, Inc. ("Faram Holding") has its principal place of business in this District, where the individual defendants are employed and serve as officers of Faram Holding, and because all defendants have regularly conducted, solicited or transacted business in this District through the Infringing Website; have solicited consumers in this District; have accepted and fulfilled sales orders from consumers within this District; have offered to sell and have sold Counterfeit Goods to consumers within this District; and have regularly and systematically directed electronic activity into the State of New York through their Infringing Website with the manifest intent of engaging in business within this District.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims arose in this District.

## THE PARTIES

6.      Plaintiff FARAM 1957 is a corporation organized and existing under the laws of Italy with a principal place of business in Giavera del Montello, province of Treviso, Italy, and is the owner of the entire right, title and interest in and to three valid and subsisting federally-registered trademarks, as depicted below, and as reflected in the trademark registrations attached hereto as Exhibits A, B and C, respectively:

Trademark: Horse design and FARAM
USPTO Registration Number 3154260



Trademark: FARAM
USPTO Registration Number 3154261

# FARAM

Trademark: Horse Design
USPTO Registration Number 3158999



These registrations based on use in the United States since at least August 2004, and the filings of the requisite declarations, have become incontestable and thus constitute prima facie evidence of the validity of the FARAM Trademarks and conclusive evidence of FARAM 1957's exclusive right to use the FARAM Trademarks in commerce. Registration of the FARAM Trademarks also constitutes constructive notice to defendants of FARAM 1957's ownership and exclusive right in the FARAM Trademarks.

7.      Defendant Faram Holding is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 450 Seventh Avenue, 36th Floor, New York, New York.

8.      Defendant Domenico Guzzardi is the Chief Executive Officer and Sales Manager of Faram Holding and is employed in its principal place of business in the County, City and State of New York.

9.      Defendant Letizia Ingallinera is the President of Faram Holding, is the wife of defendant Guzzardi, and is employed in its principal place of business in the County, City and State of New York.

PHDATA 5620978_1

10.  Defendant Francesco Ingallinera is the brother of defendant Letizia Ingallinera and is or was the President and an "owner" of FGM Service, Inc. ("FGM"), purportedly a Connecticut corporation with a principal place of business located at 450 Seventh Avenue, New York, New York, which supposedly sold to Faram Holding the Faram trade name and associated goodwill and the FARAM Trademarks, even though neither Francesco Ingallinera nor FGM ever possessed any such rights. Francesco Ingallinera is employed at Faram Holding's principal place of business in the County, City and State of New York.

## FACTUAL BACKGROUND

11.  Faram S.p.A. (the "Old Faram") was an Italian company founded in 1957 that, by the 1970's, had become a world leader in innovative office space design and the manufacture of office furniture and partitions. The high quality and finish of Old Faram's products depended upon the use of high-end materials and the manufacture and assembly of the complete products under the supervision of experienced engineers in the factory.

12.  Old Faram continued directly to sell its products in the United States until December 2013. At that point, due to financial difficulties it had been encountering, Old Faram began filling orders by authorizing Faram Holding to source materials from Old Faram's exclusive suppliers. This was done under a letter agreement dated April 11, 2014 (the "Letter Agreeement"), in which Faram Holding explicitly acknowledged that Old Faram was the owner of the FARAM Trademarks and that the Letter Agreement itself would be automatically terminated if Old Faram filed for bankruptcy. Ultimately, Old Faram was forced to seek bankruptcy protection in the Treviso Court of Law, in Italy, where it was declared bankrupt on May 12, 2014. The Treviso Court of Law appointed an official trustee, Riccardo Pucher, who

established competitive bidding for Old Faram's assets, which included the FARAM Trademarks.

13. On August 11, 2014, after a public auction, Aliantech S.p.A. ("Aliantech"), a wholly-owned subsidiary of an Italian private equity firm, Aliante Equity Tre S.p.A., purchased the assets of Old Faram, including the FARAM Trademarks, for the sum of € 1,360,000. The same day, the Treviso Court of Law entered a decree ordering the transfer to Aliantech of Old Faram's assets, including the FARAM Trademarks. As provided for in the Letter Agreement, which was to be automatically terminated if Old Faram became bankrupt, the trustee notified Faram Holding on July 17, 2014 that the Letter Agreement was terminated and that Faram Holding was to cease using the FARAM Trademarks.

14. Following the transfer, on August 8, 2014, Aliantech changed its name to Faram 1957 S.p.A., the plaintiff in this action. The change of name was executed on December 23, 2014 and recorded with the USPTO on February 12, 2015.

15. On September 30, 2014, Aliantech applied to register Old Faram's trademarks with the World Intellectual Property Organization ("WIPO"). The deed for the FARAM Trademarks was registered with WIPO on September 30, 2014.

16. Subsequently, on January 8, 2015, after notification from WIPO of the change of ownership, the United States Patent and Trademark Office ("USPTO") recognized FARAM 1957 as the exclusive owner of the FARAM Trademarks. The USPTO registrations are attached hereto as Exhibits A, B and C, respectively.

17. FARAM 1957 began communicating with Old Faram's customers in early 2015 and to warn those customers that Faram Holding was not authorized to sell furniture bearing the FARAM Trademarks. On March 26, 2015, Faram 1957 established a new subsidiary in New York to sell the Faram-branded products in the United States. In June 2015, Faram 1957 participated in a specialized furniture fair in Chicago in order to seek alliances for the selling of its products in the United States. These reasonable efforts to resume the selling of Faram-branded furniture in the United States evince Faram 1957's intent to continue using the FARAM Trademarks in commerce in this country. On behalf of FARAM 1957, notices were sent in October 2014 to various companies (including Faram Holding) which had had dealings with Old Faram, warning them not to use the FARAM Trademarks.

18. In early 2015, it came to the attention of FARAM 1957 that Faram Holding — which had been a distributor for Old Faram but had no relationship with FARAM 1957 — was marketing, offering for sale and selling products identical to those sold by FARAM 1957, with the FARAM Trademarks, in the United States. These activities were unauthorized by FARAM 1957.

19. Accordingly, in February 2015, FARAM 1957 commenced injunctive proceedings against Faram Holding before the Court of Venice, Italy. That court rejected the application due to a lack of personal jurisdiction over Faram Holding.

20. During the course of the proceedings in Venice, Faram Holding claimed to be the lawful owner of the FARAM Trademarks based upon spurious documentation.

21. Specifically, Faram Holding claimed that the FARAM Trademarks had been sold by Old Faram, on June 27, 2013, to FGM (which then had an address in Brooklyn) for

the sum of € 300,000. The Trademark Sale Agreement supposedly memorializing this transaction, while dated June 27, 2013, was not actually signed until January 27, 2014. However, the supposed seller, Old Faram, did not have the ability to convey its assets, including the FARAM Trademarks, because they had been pledged to banks that were creditors of Old Faram. Moreover, the recited consideration of € 300,000 was never received by Old Faram, but rather by Nimio S.r.l. ("Nimio"), a company owned by the Mio family (shareholders of Old Faram), who had no authority to transfer Old Faram's assets. Nor was the sum of € 300,000 even paid as consideration for the purchase of Old Faram's assets. To the contrary, the sum was paid as consideration for the purchase of certain materials. When Nimio failed to deliver the agreed-upon materials to FGM, defendant Francesco Ingallinera wrote Nimio, on behalf of FGM, on April 14, 2014, demanding that Nimio return the € 300,000 no later than April 17, 2014. The demand for the return of this money on the grounds of non-delivery of certain materials establishes that FGM never purchased Old Faram's assets and that the post-dated June 27, 2013 Trademark Sale Agreement is fraudulent. Significantly, Old Faram's records do not contain any copy of that Trademark Sale Agreement. Moreover, the bona fides of the Trademark Sale Agreement are refuted by the Letter Agreement of April 11, 2014, in which Faram Holding acknowledged that Old Faram still owned the FARAM Trademarks.

      22.     In the Venice proceedings, Faram Holding also relied upon another spurious document — a purported Asset Purchase Agreement dated April 17, 2014 (the same date by which FGM had demanded the return of the € 300,000 supposedly paid as consideration of the FARAM Trademarks). The Asset Purchase Agreement provided that FGM (which now had the same address, 450 Seventh Avenue, New York, New York, as Faram Holding) sold the Old Faram assets, including the FARAM Trademarks, to Faram Holding. The Asset Purchase

Agreement was signed by Letizia Ingallinera on behalf of Faram Holding and by her brother, Francesco Ingallinera, on behalf of FGM. Since FGM did not own the FARAM Trademarks (never having acquired them from Old Faram), this supposed transfer of those trademarks to Faram Holding is fraudulent and a nullity.

### FIRST CLAIM FOR RELIEF

**Federal Trademark Counterfeiting and Infringement
(15 U.S.C. § 1114)**

23. FARAM 1957 repeats and realleges the allegations contained in paragraphs 1 through 22 as if fully set forth herein.

24. The FARAM Trademarks and the goodwill of the business associated with them in the United States and throughout the world are of great and incalculable value, are highly distinctive, and have become universally associated in the public mind with FARAM 1957's products and related services of the highest quality and reputation.

25. Without FARAM 1957's authorization or consent, and having knowledge of FARAM 1957's well-known and prior rights in the FARAM Trademarks and the fact that their Counterfeit Goods bear trademarks which are intentionally identical to and thus confusingly similar to the FARAM Trademarks, Faram Holding and the individual defendants have manufactured, distributed, offered for sale and/or sold the Counterfeit Goods to the consuming public in direct competition with FARAM 1957's sale of genuine Faram products, in or affecting interstate commerce.

26. Defendants' use of copies or simulations of the FARAM Trademarks in conjunction with their Infringing Website and the Counterfeit Goods is likely to cause and is

causing confusion, mistake and deception among the general purchasing public as to the origin of the Counterfeit Goods, and is likely to deceive the public into believing the Counterfeit Goods being sold by defendants originate from, are associated with, or are otherwise authorized, licensed or sponsored by FARAM 1957, all to the damage and detriment of FARAM 1957's reputation, goodwill and sales. The damage and detriment to FARAM 1957's reputation, goodwill and sales is particularly pronounced because the Counterfeit Goods are inferior in quality to the goods which Old Faram was known for in that the Counterfeit Goods are not completely manufactured and assembled in the factory under the quality-control supervision of experienced engineers, but, rather, are assembled at the customers' locations without expert supervision.

27.   FARAM 1957 has no adequate remedy at law and, if defendants' activities are not enjoined, FARAM 1957 will continue to suffer irreparable harm and injury to its goodwill and reputation.

## SECOND CLAIM FOR RELIEF

**Unfair Competition and False Designation of Origin
(15 U.S.C. § 1125(a))**

28.   FARAM 1957 repeats and realleges the allegations contained in paragraphs 1 through 27 as if fully set forth herein.

29.   The Counterfeit Goods sold and offered for sale by defendants are of the same nature and type as FARAM 1957's products sold and offered for sale by FARAM 1957 and, as such, defendants' use is likely to cause confusion to the general public.

30.   By misappropriating and using the FARAM Trademarks, defendants misrepresent and falsely describe to the general public the origin and source of the Counterfeit Goods and create a likelihood of confusion by consumers and others as to the source of such merchandise.

31.   Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of the Counterfeit Goods creates express and implied misrepresentations that the Counterfeit Goods were created, authorized or approved by FARAM 1957, all to defendants' profit and to FARAM 1957's great damage and injury, especially given the inferior quality of the Counterfeit Goods.

32.   Defendants' acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that defendants' use of the FARAM Trademarks, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

33.   FARAM 1957 has no adequate remedy at law and, if defendants' activities are not enjoined, FARAM 1957 will continue to suffer irreparable harm and injury to its goodwill and reputation.

## THIRD CLAIM FOR RELIEF

### Cybersquatting under the Anticybersquatting Consumer Protection Act
### (15 U.S.C. § 1125(d)(1))

34.   FARAM 1957 repeats and realleges the allegations contained in paragraphs 1 through 33 as if fully set forth herein.

35. Faram Holding's Infringing Website has a domain name which is identical to or confusingly similar to one or more of FARAM 1957's trademarks, which were distinctive and/or famous at the time Faram Holding registered its domain name.

36. Defendants registered and have used the domain name for its Infringing Website with a bad-faith intent to confuse the public and to profit from FARAM 1957's trademarks.

37. Defendants' activities violate the federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

38. FARAM 1957 has no adequate remedy at law and, if defendants' activities are not enjoined, FARAM 1957 will continue to suffer irreparable harm and injury to its goodwill and reputation.

### FOURTH CLAIM FOR RELIEF

**Unlawful Deceptive Acts and Practices
(New York General Business Law § 349)**

39. FARAM 1957 repeats and realleges the allegations contained in paragraphs 1 through 38 as if fully set forth herein.

40. Defendants, without FARAM 1957's authorization or consent, and having knowledge of FARAM 1957's well-known and prior rights in the FARAM Trademarks, and the fact that defendants' Counterfeit Goods bear trademarks which are identical to the FARAM Trademarks, have manufactured, imported, distributed, offered for sale and/or sold the

Counterfeit Goods to the consuming public in direct competition with FARAM 1957's sale of genuine merchandise and in violation of New York General Business Law § 349.

41. Defendants' use of copies or simulations of the FARAM Trademarks is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of defendants' Counterfeit Goods, and is likely to deceive the public into believing the Counterfeit Goods which defendants are selling and which are inferior in quality to FARAM 1957's goods originate from, are associated with, or are otherwise authorized by FARAM 1957.

42. Defendants' deceptive acts and practices involve public sales activities of a recurring nature.

43. FARAM 1957 has no adequate remedy at law and, if defendants' activities are not enjoined, FARAM 1957 will continue to suffer irreparable harm and injury to its goodwill and reputation.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff FARAM 1957 prays for judgment against defendants as follows:

1. Preliminarily and permanently enjoining defendants, their affiliates, directors, officers, agents, employees, attorneys, and all persons in active concert with them from:

(a) using the FARAM Trademarks or any reproduction, counterfeit, copy or imitation in connection with the distribution, advertising, offer for sale and/or sale of merchandise not the genuine products of FARAM 1957;

(b) passing off, inducing or enabling others to sell or pass off any Counterfeit Goods as and for FARAM 1957's products;

(c) shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner furniture, furnishings or partitions falsely bearing the FARAM Trademarks, or any reproduction, counterfeit, copy or imitation thereof;

(d) utilizing the domain name associated with the Infringing Website and registering any additional domain names that use or incorporate the FARAM Trademarks; and

(e) operating and/or hosting the Infringing Website.

2. Requiring defendants, within thirty days after service of judgment upon them, to file with the Court and serve upon FARAM 1957 a written report under oath setting forth in detail the manner in which they have complied with paragraph 1 of this Prayer for Relief.

3. Ordering that the Infringing Website and any corresponding domain names be disabled by the appropriate domain name registries or registrars.

4. Requiring defendants to account for and pay over to FARAM 1957 all profits realized by defendants by reason of their unlawful acts alleged herein and that the amount of damages for infringement of the FARAM Trademarks be increased by a sum not exceeding three times the amount thereof as provided by law.

5. In the alternative, at FARAM 1957's election, awarding FARAM 1957 statutory damages of $2 million for each of the FARAM Trademarks counterfeited by defendants and $250,000 per domain name used in the Infringing Website for defendants' willful counterfeiting and cybersquatting of the FARAM Trademarks.

PHDATA 5620978_1

6.  Awarding FARAM 1957 its costs, reasonable attorneys' fees and investigators' fees incurred in this action;

7.  Awarding FARAM 1957 pre-judgment interest on its judgment.

8.  Awarding FARAM 1957 such other and further relief as the Court may deem equitable.

Date:  New York, New York
       April 1, 2016              Respectfully submitted,

                                  SCHNADER HARRISON SEGAL & LEWIS LLP

                                  By: _____
                                      Daniel J. Brooks
                                      dbrooks@schnader.com
                                      Christian Moretti
                                      cmoretti@schnader.com
                                      140 Broadway, Suite 3100
                                      New York, New York 10005
                                      Telephone: (212) 973-8000
                                      Facsimile:  (212) 972-8798

                                  *Attorneys for Plaintiff*